**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| In re: | ) |
| Charles L. Lett, Sr., | ) |
| Debtor, | ) |
| State of Alabama, by and through the Alabama Department of Community and Economic Affairs, | ) ) ) |
| Plaintiff/Appellant, | ) Civil Action 08-00443-CB-M ) |
| v. | ) |
| Charles L. Lett, Sr. and Charles L. Lett, M.D., P.C., | ) ) |
| Defendant/Appellee. | ) ) |

**OPINION and ORDER**

This matter is before the Court on appeal from the decision of the Bankruptcy Court in an Adversary Proceeding. The Alabama Department of Economic and Community Affairs (ADECA) appeals the Bankruptcy Court's order denying its motion to alter or amend the judgment dismissing its adversary complaint as untimely. For reasons discussed below, the decision of the Bankruptcy Court is affirmed.

**Facts**

**Parties & Appeals**

Appellee Charles L. Lett, Sr. is a physician who practices medicine in Selma, Alabama and is the sole member of Charles L. Lett, M.D., P.C. a professional corporation

1

organized by the debtor under the laws of the state of Alabama.[1]  Appellant Alabama Department of Economic and Community Affairs (ADECA) is a judgment creditor, having obtained and recorded a pre-bankruptcy judgment against Dr. Lett.[2]

**Factual & Procedural Background**

On December 19, 2001, ADECA obtained a state court judgment against Dr. Lett due to his default on a HUD Section 108 loan.  The purpose of the loan was to renovate a former hospital, the Good Samaritan Hospital, located in Selma, Alabama.   The judgment, in the amount of $3.012 million,[3] was subsequently recorded in the Dallas County Probate Court.  ADECA engaged in post-judgment discovery as part of its attempt to collect on the judgment.  On March 26, 2004, one day prior to his scheduled deposition by ADECA, Dr. Lett filed an individual Chapter 11 bankruptcy petition.[4]

On March 29, 2004, the Bankruptcy Court issued a "Notice of Chapter 11 Bankruptcy Case Meeting of Creditors, & Deadlines" to  Dr. Lett's creditors, including ADECA.  Among the deadlines listed on the form notice was the date for the first meeting of the creditors.  Although the form contained a section entitled "Deadline to File a Complaint to Determine Dischargeability of Certain Debts," the space for the date

---

[1] Hereinafter, Dr. Lett may also be referred to as "appellant" or "the debtor."
[2] ADECA has also filed a separate appeal of the Bankruptcy Court's order confirming the debtor's Chapter 11 reorganization plan ("the confirmation appeal"), Civil Action No. 08-00442.  Due to a merger of law firms, ADECA's counsel developed a conflict in the confirmation appeal.  For that reason, this Court decided not to consolidate the appeals.  ADECA has retained new counsel in the confirmation appeal
[3] Originally, the amount of the judgment, which was entered by consent, was approximately $2.2 million.  Because Lett and his codefendants in the state court action failed to make any of the payments the parties had agreed to, the court entered an additional judgment in excess of $800,000 for attorney's fees and costs.
[4] Dr. Lett also filed a separate Chapter 11 petition on behalf of his corporation, The Lighthouse, Inc.  That case was converted to a Chapter 7 proceeding is not involved in this appeal.

was inexplicably left blank. "[ADECA's] counsel understood the lack of a specific date to mean that no deadline had been set. Subsequently, counsel called the clerk's office, which confirmed that no such deadline had been set by the Court." (Appellant's Brf., Doc. 10, at 3.) ADECA attended the first meeting of the creditors which took place on May 13, 2004.

Lett's estate consisted of one primary asset—a nursing home and two acres of land located in Selma, Alabama.[5] Lett and his wife each owned an undivided one-half interest in the property. Prior to filing bankruptcy, Lett had leased the nursing home to Crear, Inc., which had subleased it to Ball Healthcare-Dallas, LLC.[6] Ultimately, the Bankruptcy Court valued Lett's interest in the nursing home at $935,000.

The nursing home was encumbered by a first mortgage to People's Bank of Selma.  Although the loan transaction between Lett and People's Bank occurred during the same time period as the HUD loan, it was not disclosed on any HUD loan documents. Therefore, ADECA was unaware of the mortgage, or the related multi-million dollar loan from People's Bank to Lett and his brother, until  June 30, 2004, when Lett 's deposition was finally commenced as part of the bankruptcy action.  Lett's deposition  was recessed and was not concluded until February 23, 2005.

On March 24, 2005, ADECA filed an "Adversary Complaint to Determine Dischargeabilty of Debt and Objection to Discharge." The adversary complaint,  which named as defendants the debtor individually, and his professional corporation, Charles L.

---

[5] The only other asset of substantial value was 72 acres of real property in Beloit, Alabama valued at $95,000.

[6] Pursuant to a loan agreement, Regions Bank holds a mortgage on Ball's leasehold interest.

Lett, M.D., P.C., sought a determination that the debt to ADECA was nondischargeable under 11 U.S.C. § 523. As grounds for the nondischargability determination, ADECA relied on state law claims of fraudulent inducement and embezzlement. The complaint also asserted a claim that Lett should be held liable for the debts of his personal corporation under theories of alter ego or piercing the corporate veil. After Lett filed an answer to the adversary complaint, the Bankruptcy Court entered a scheduling order setting deadlines for the adversary proceeding, and discovery commenced. The discovery process lasted several months and included the review of voluminous documents. Trial of the adversary proceeding was commenced on November 9, 2005 and was scheduled to last two days. Because the presentation of evidence took longer than expected, the remainder of the five-day trial took place over several months, as the Bankruptcy Court's schedule allowed. The trial was concluded February 2, 2006.

Ultimately, the Bankruptcy Court found that the adversary complaint was barred by the limitations period found in Bankruptcy Rule 4007(c). In his answer to the complaint, Lett had pled the "statute of limitations," generally as an affirmative defense.[7] He did not file any pretrial dispositive motions raising the defense. Prior to trial, Lett filed a Position Statement setting forth the legal issues to be addressed. With respect to the statute of limitations, Lett asserted that the two-year limitations period[8] had expired and that the claim "was filed beyond sixty days of this case being filed." During the adversary trial, Lett's attorney made several references to the state statute of limitations

---

[7] As will become clear, in an adversary proceeding the statute of limitations defense may refer either to the limitations period applicable to the underlying adversary claim or to the sixty-day limitations period for filing an adversary proceeding found Rule 4007(c).

[8] The two-year limitations period presumably refers to the state statute of limitations applicable to the ADECA's state law claims.

and its effect on the claims presented at trial.  He did not mention Rule 4007(c) or the 60-day deadline at trial, nor did he mention it in his closing argument(which was presented in the form of a post-trial brief).   The issue became clear only after ADECA, in its post-trial rebuttal brief, argued that Lett was *not* relying on Rule 4007(c)'s 60-day deadline.  Lett disputed this argument in a surrebuttal brief, stating:

> The argument that the 60 days (sic) limitation was not asserted is incorrect.  It was encompassed in the statute of limitations defense and specifically raised on the record at the outset of the trial and in the position statement at no. 3 (11 U.S.C. § 108(b) and see Rule 407 (sic)).

(Def.'s  Reply Brf., AP Doc. 40, at 2.)


 The Bankruptcy Court issued an order granting the defendants' motion for judgment as a matter of law, dismissing ADECA's claims in the adversary proceedings and declaring Lett's debt to ADECA to be dischargeable.  The basis for the ruling was ADECA's failure to comply with the 60-day deadline.  The Bankruptcy court held:

> [R]eading [11 U.S.C.] § 523(c) and Rule 4007(c) together, a creditor seeking nondischargeability of a debt under § 523(a)(2), (4), (6) or (15) must file a dischargeability complaint  the bankruptcy court no later than 60 days after the first date set for the debtor's § 341 meeting of creditors, unless the creditor files a motion for extension of time before the 60 days has expired and the court grants such motion. . .   Otherwise the debt will be discharged.
>         As noted above, the date first set for Dr. Lett's § 341 meeting of creditors was May 13, 2004  So under the Rule and Code section previously cited, ADECA had 60 days from May 13, 2004 which was July 12, 2004) to file its dischargeability complaint against Lett under 523 (a)(2) and (4). However, ADECA did not file its complaint until March 24, 2005, well after the time had expired under Rule 4007(c).  Further ADECA did not file a motion for extension of time before the deadline either.

5

(Bankruptcy Ct. Order, AP Doc. 45, citations omitted.)[9]  ADECA subsequently filed a motion to alter or amend the judgment, which was denied by order dated January 14, 2008.  ADECA filed a timely appeal from the order denying its motion to alter or amend the judgment.

## Legal Analysis

### Issues Presented

ADECA argues that the Bankruptcy Court erred in holding that its nondischargeability complaint was due to be dismissed as untimely based on Rule 4007(c).  ADECA raises two alternative arguments in support of its position.  First, it contends that Lett waived or forfeited his right to assert the limitations period found in Rule 4007(c) because he failed to "expressly argue[ ] [that position] in any pleading, motion, or other document. . until after trial[.]"  (Doc. 10 at 7.)  Second, ADECA argues that the Bankruptcy Court "commit[ted] reversible error by failing to provide sufficient notice under Bankruptcy Rules 4007(c) and 2002(f) of the deadline for filing a nondischargeability complaint and by failing to exercise its equitable powers under 11 U.S.C.A. to  hold that the deadlines were equitably tolled due to the circumstances[.]"

### Standard of Review

In reviewing a bankruptcy appeal, the district court functions as an appellate court.  *In re Sublett*, 895 F.2d 1381, 1383 (11th Cir. 1990).[10]  The bankruptcy court's legal conclusions are subject to de novo review, but its findings of fact may be reversed only for clear error.  *In re Optical Technologies, Inc.*, 425 F.3d 1294, 1299-1300 (11th Cir.

---

[9] Documents filed in the in the adversary proceeding below will be cited as "AP Doc." followed by the Bankruptcy Court document number.

[10] Pursuant to 28 U.S.C. § 158, this Court has jurisdiction over appeals from final orders of the bankruptcy court.

2005); *see also* Bankruptcy Rule 8013 (bankruptcy court's findings of fact "shall not be set aside unless clearly erroneous").

## Discussion

### Lett Did Not Forfeit Rule 4007(c) Defense

Bankruptcy Rule 4007(c) requires that "a complaint to determine the dischargeability of a debt under § 523(c) shall be filed no later than 60 days after the first date set for the meeting of creditors under § 341(a)." In *Kontrick v. Ryan*, 540 U.S. 443 (2004), the Supreme Court addressed a similar limitations period found in Bankruptcy Rule 4004(c). [11] In that case, the creditor filed his amended complaint more than sixty days after the first meeting of the creditors. However, the debtor did not raise the timeliness issue until he filed a post-judgment motion to reconsider. The question addressed by the Supreme Court was "whether Kontrick forfeited his right to assert the untimeliness of Ryan's amended complaint by failing to raise the issue until after that complaint was adjudicated on the merits."  *Id.* at 458.  The Court first addressed, and rejected, the view of some circuits that rule-created deadlines, such as those found in Rules 4004(c) and 4007(c), were jurisdictional.[12]  *Id.* at 452-56.  The Court held that these were "claims-processing" rules, and as such could be forfeited if not asserted in a timely manner. *Id.* at 454. The proper method for asserting a time bar, the Court noted, is "in an answer or responsive pleading." *Id.* at 458.

---

[11] Rule 4004 applies objections to discharge in general, while Rule 4007 applies to objections to the discharge of a particular debt.  Both are subject to a 60-day deadline that runs from the date of the first meeting of the creditors.

[12] The Court pointed out that only Congress may confer subject matter jurisdiction, and the Bankruptcy Rules were created by the Court, not Congress

That brings us to the first issue presented in ADECA's appeal--whether Lett forfeited his right to assert an affirmative defense based on the limitations period set forth in Rule 4007(c).  The questions raised by this argument are twofold.  First, does failure to plead Rule 4007(c) as a specific affirmative defense results in a forfeiture of that defense?  Rule 8(c) of the Federal Rules of Civil Procedure requires that certain affirmative defenses, including the statute of limitations, be included in an answer or responsive pleading.  Repeatedly, courts have referred to Rule 4007(c) as "akin" to a statute of limitations.   *See, e.g.*, *In re Themy*, 6 F.3d 688, 690 (10th Cir. 1993); *In re Bozeman*, 226 B.R. 627, 630 (B.A.P. 8th Cir. 1998);  *In re Camus*, 386 B.R. 396, 397 (Bankr. D. Conn. 2008). Indeed, were Rule 4007(c) not encompassed within the phrase "statute of limitations," there would be no need to preserve it as an affirmative defense.  At the pleading stage, a defendant may preserve all applicable limitations periods simply by invoking the statute of limitations, in general.  *Heiar v. Crawford County*, 746 F.2d 1190 (7th Cir. 1984).  "While a limitations defense must be asserted in a responsive pleading, it need not be articulated with any rigorous degree of specificity and is sufficiently raised for purposes of rule 8 by its *bare assertion*."  *Zotos v. Lindbergh School Dist.*, 121 F.3d 356, 361 (8th Cir. 1997) (citations and quotations omitted).  Thus, Lett's assertion of the statute of limitations as an affirmative defense was sufficient to preserve a defense based on Rule 4007(c).

The second question is whether Lett *subsequently* forfeited the Rule 4007(c) defense by failing to pursue it until after the trial was concluded.  ADECA emphatically argues that Lett did not rely on this defense until he filed a post-trial surrebuttal brief.  The Bankruptcy Court found, however, that Lett, in his pretrial  position statement, had

8

implicitly invoked Rule 4007(c) by asserting as part of his statute limitations argument "that the 60[-]day period had expired[.]" ADECA does not dispute the Bankruptcy Court's factual finding that Lett asserted a 60-day deadline in his pretrial position statement, but it does dispute that court's inference that the 60-day deadline was a reference to Rule 4007(c). Both the Bankruptcy Court's factual findings and the inferences drawn from them are subject to the clearly erroneous standard of review. *Dothan Coca-Cola Bottling Co, Inc. v. United States*, 745 F.2d 1400, 1403 (11th Cir. 1984). And "findings of fact and inferences drawn therefrom are clearly erroneous only when 'the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Debra P. v. Turlington*, 730 F.2d 1405, 1409 (11th Cir. 1984) (quoting *United States v. Gypsum Co.*, 333 U.S. 364, 395 (1948)). That is not the case here. Undoubtedly, Lett could have done a better job of making his legal position clear. In the same paragraph he invoked the state statute of limitations and also stated that the "claim [presumably the adversary complaint] was filed more than sixty days of the case being filed." Obviously, this does not *correctly* state a Rule 4007(c) defense, since the 60-day time limit runs from the date set for the First Meeting of the Creditors, rather than the filing of the action. Although ADECA makes a plausible argument that the reference to the 60-day time limit could have been interpreted differently,[13] the Court is not firmly and definitely convinced that the Bankruptcy Court's inference was wrong.

---

[13] In a subsequent paragraph in his position statement, Lett makes reference to the 60-day period found in 11 U.S.C. § 108. But that period applies only to certain actions by the trustee. *See* 11 U.S.C. § 108(b)(2)

Even if the Rule 4007(c) limitations period had not been raised specifically in the pretrial position statement, the Bankruptcy Court did not err in considering it.  As discussed above, Lett preserved this defense in his answer by pleading the statute of limitations as an affirmative defense.  Unquestionably, Lett focused his limitations defense on the state statute of limitations.  But this fact did not constitute a waiver of the Rule 4007(c) limitations period.  *See, e.g., Zotos*, 121 F.3d at 361 (rejecting argument that defendant waived correct statute of limitations by relying on incorrect limitations period in summary judgment brief); *accord Yoder v. Honeywell, Inc.*, 104 F.3d 1215, 1224-25 n.3 (10th Cir. 1997) (defendant did not waive limitations defense by relying on wrong choice of law).  Because the defense was not waived, the Bankruptcy Court had discretion to consider it at any time prior to a decision on the merits.  *See Pessotti v. Eagle Mfg. Co.*, 946 F.2d 974 (1st Cir. 1991)  (rejecting argument that limitations defendant waived limitations defense preserved in answer but not argued until motion for directed verdict judgment); *cf. Kontrick,* 540 U.S. at 458 (rejecting time bar defense raised for first time in post-judgment motion); *but see Bradford-White Corp v. Ernst & Whinney*, 872 F.2d 1153 (3rd Cir. 1989) (limitations defense asserted in answer but not argued until post-judgment motion was waived).  In sum, Lett did not forfeit or waive his Rule 4007(c) limitations defense, and the Bankruptcy Court's decision to apply the limitations period was not in error.

### Omission of Dischargeability Deadline is No Excuse for Late Filing

ADECA alternatively argues that the Bankruptcy Court should have extended the Rule 4007(c), first, because the failure to include the deadline the Bankruptcy Notice meant that the deadline never began to run and, second, because it is inequitable to apply

the deadline in this case.  ADECA's first argument is clearly foreclosed by Eleventh Circuit precedent.  In *In re Williamson*, 15 F.3d 1037 (11th Cir. 1994), the official Bankruptcy Notice stated that the deadline for filing a dischargeability complaint  was "to be set."  The creditor filed its complaint sixteen days late and argued that the late filing should be excused because of the bankruptcy court's failure to provide actual notice of the deadline.  Adopting the district court's opinion, the Eleventh Circuit held that the notice's lack of specificity "d[id] not relieve [the creditor] of its duty to file within the period prescribed by Rule 4007." *Id.* at 1039.

The *Williamson* court relied on a prior Eleventh Circuit decision, *In re Alton*, 837 F.2d 457 (11th Cir. 1988) (per curiam), which involved even more compelling facts.  Alton had failed to list the creditor in his bankruptcy petition, so the debtor did not receive any notice at all from the bankruptcy court.  Alton did, however, inform the debtor that a bankruptcy petition had been filed.  The Eleventh Circuit held that "[d]espite the misleading actions, inadvertent or intentional, of debtor Alton, *the time specifications set out in the Bankruptcy Code are sufficiently clear* to have placed an obligation on creditor Byrd to follow the case and to take the timely action necessary to pursue his claim." *Id.* at 458 (emphasis added).  In reaching its decision, the *Alton* court adopted the reasoning of a Fifth Circuit case, *Neely v. Murchison (In re Neely)*, 815 F.2d 345 (5th Cir. 1987).  *Neely* addressed a fact situation identical to the case at hand.  The Rule 4007(c) deadline was left blank, and upon inquiry the clerk's office told Neely's counsel that no date had been set.  Distinguishing cases in which affirmative misrepresentations had been made, the court held:

> We do not condone the clerk's error or suggest that the notice provision is without force to prevent an obvious injustice to the creditor.  Faced with a

11

>   practical inconsistency in the requirements of Rule 4007(c), we conclude
>   that because Neeley had notice of the bankruptcy proceedings and more
>   than ample opportunity to protect his rights under § 523(c), the purpose of
>   the notice provision was met. The district court properly dismissed
>   Neeley's objection to dischargeability as time-barred.

*Id.* at 347 (footnote omitted).  Based on the authority of *Williamson, Alton* and *Neely*, the Court finds that the Rule 4007(c) deadline for filing a dischargeability complaint begins to run automatically, by operation of the rule.

ADECA's equitable argument is equally unavailing simply because equitable relief is not warranted under these facts.[14]  Courts have invoked equity to grant relief when a creditor has been affirmatively misled by actions of the court.  For instance, the Rule 4007(c) deadlines have been equitably extended where the court issued a notice containing an erroneous deadline or where the court sent notices with conflicting deadlines.  *See, e.g., In re Themy*, 6 F.3d 688 (10th Cir. 1993) (incorrect deadline); *In re Anwiler*, 958 F.2d 925 (9th Cir. 1992) (conflicting deadlines).    That is not the same as a simple omission  where a deadline is simply left blank.  In *Williamson*, the Eleventh Circuit rejected the creditor's alternative argument that the omission of the deadline from the bankruptcy court's notice entitled him to equitable relief.   The court pointed out that the creditor had "actual notice of the pending action [and] could have protected itself by simply filing within the sixty day period set forth in Rule 4007." *Id.* at 1040.[15]

---

[14] The scope of the Bankruptcy Court's equitable powers is subject to *de novo* review, but its exercise of those powers is reviewed for abuse of discretion.  *In re Kingsley,* 518 F.3d 874 (11th Cir. 2008).

[15] ADECA argues that *Williamson*, *Alton* and *Neely* have been abrogated by the Supreme Court's decisions in *Kontrick* and subsequent cases, holding that claims-processing rules, such as Bankruptcy Rule 4007(c), are nonjurisdictional.  Neither the Eleventh Circuit in *Williamson* or *Alton* nor the Fifth Circuit in *Neely* expressed any opinion on the jurisdictional nature of Rule 4007(c).  The issue in all three was whether the deadline could be extended.  In each case, the decision not to extend the deadline was based on a

This view is consistent with the application of equitable tolling in areas outside the bankruptcy realm. As the Supreme Court has stated:

> Federal courts have typically extended equitable relief only sparingly. We have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass. We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights.

*Irwin v. Department of Veterans Affairs,* 498 U.S. 89, 96 (1990). Generally, equitable tolling has been used to extend limitations periods only in cases involving affirmative misconduct or concealment. *Jackson v. Astrue*, 506 F.3d 1349, 1357 (11th Cir. 2007). In some instances, actions by the clerk of court have been grounds for equitable tolling, but those cases have involved errors that were affirmatively misleading or actually *caused* a party to miss a deadline. S*ee id.* (and cases cited therein). Such exceptions are in keeping with the rule that equitable tolling requires a showing of due diligence. *Raziano v. United States*, 999 F.2d 1539, 1541 (11th Cir. 1993). For example, a party is not entitled to equitable relief unless he can demonstrate that he *reasonably* relied on another party's misrepresentation. *First Alabama Bank, N.A. v. United States*, 981 F.2d 1226 (11th Cir. 1993). In the case at hand, the due diligence/reasonable reliance element is missing because it simply is not reasonable for an attorney to rely on the court to calculate a deadline when that deadline can be determined by reference to the rules. "[I]t

---

strict construction of bankruptcy deadlines, *not* on a jurisdictional interpretation of those deadlines.

is not the responsibility of the clerk's office to inform the lawyer of the law." *Jackson v. Crosby*, 375 F.3d 1291, 1299 (11th Cir. 2004) (Black, J. concurring).[16]

**Conclusion**

For the foregoing reasons, this Court **AFFIRMS** the Bankruptcy Court's order denying ADECA's motion to alter or amend the judgment.

**DONE** and **ORDERED** this the 23rd day of March, 2009.

*s/ Charles R. Butler, Jr.*
**Senior United States District Judge**

---

[16] The *Jackson* court denied equitable relief from a filing deadline under much more compelling circumstances than those presented here. In that case, a habeas petitioner challenging his state capital murder conviction filed a motion to alter or amend the judgment outside the ten-day time limit. As a result, the motion did not toll his appeal period, and his appeal was dismissed as untimely. Petitioner's counsel requested that the appellate court reconsider and deem his appeal timely under the "unique circumstances doctrine." That doctrine "excuses a litigant's failure to abide by the jurisdictional time limits established by the rules . . . when the failure is caused by the litigant's reasonable reliance on a specific assurance by a judicial officer." *Id.* at 1297. Counsel argued that he relied on someone in the district court clerk's office to interpret a local rule and to help him calculate the number of days within which he had to file his motion. Though troubled with the result, *i.e.*, that petitioner would be denied an appeal, the panel found that reliance was not reasonable and denied the motion to reconsider. Although *Jackson* involved a jurisdictional time limit and the time limit here is clearly nonjurisdictional, the discussion of the reasonableness of an attorney's reliance is instructive nonetheless. *See id.* at 1298 (discussing cases).